IN RE PROTECTIVE SERVICE OF STITT.

(No. 85AP-30—Decided July 25, 1985.)

*Michael Miller,* prosecuting attorney, and *David L. McClure,* for appellee Franklin County Department of Human Services.

*Kincaid, Palmer & Randall* and *Kevin A. Craine,* for appellant Hester Stitt.

STERN, J. This cause came on to be heard from an order issued by the probate court authorizing the appellee, Franklin County Department of Human Services, to place appellant in a proper convalescent home, and authorizing the director of that agency to give consent for appellant for the designated protective services.

The facts in this case are the agreed statement of facts:

"The following is submitted in lieu of a transcript of the proceedings in the above captioned matter at the trial court pursuant to Ohio Rule of Appellate Procedure 9[D]. The issues presented herein arose through [the] filing of a Petition for Court Ordered Protective Service by the Franklin County Department of Human Services (FCDHS) in the Franklin County Probate Court pursuant to Ohio Revised Code 5101.65. After a hearing in chambers where testimony of witnesses was taken, Judge Richard B. Metcalf issued an order that authorized petitioner to make arrangements for respondent to be placed in a nursing home, to wit: Winchester Place, Canal Winchester, Ohio, an intermediate care facility. The following facts are hereby stipulated to by and between the parties through counsel.

"1. Hester Stitt was given proper legal notice of the proceedings which took place at the Franklin County Probate Court on December 4, 1984, at 10:30 a.m. Present at the hearing were counsel for respondent, Kevin A. Craine, and counsel for the Franklin County Department of Human Services, James R. Kirk, Assistant Franklin County Prosecutor. Witnesses present who testified were Sue Farnlacher, Homemaker for Community Health and Nursing Services, [and] Grace Bates, worker from the Adult Protective Services Unit of the Franklin County Department of Human Services. The respondent was not present.

"2. Hester Stitt is mentally alert and capable of making most decisions regarding her lifestyle, however, she lacks sufficient understanding to make certain reasonable decisions about her daily living which facilitates the health care necessary for life support. She has expressed a desire to remain in her present place of residence and admits that she in [sic] in need of some support services.

"3. Hester Stitt refused to attend the proceedings held in the Franklin County Probate Court on December 4, 1984, regarding the Petition for Court Ordered Protective Services filed by the Franklin County Department of Human Services (FCDHS) on November 27, 1984, because she felt she would be embarrassed and endure harassment from exposure to the testimony of various social workers.

"4. Hester Stitt is 83 years of age, has been totally blind since childhood, and is now incontinent of bladder and bowel. Such incontinence from time to time causes urine and feces to accumulate in small amounts on the floor of her dwelling. She has lived independently throughout her entire adult life and has lived at her present residence for four and one-half (4½) years.

"5. Hester Stitt's apartment is generally unclean with intermittant [sic] roach and ant infestation.

"6. FCDHS worker's [sic] found some food in her refrigerator which was spoiled and inedible; other food was safe and edible.

"7. It has been reported that respondent has, on occasion, ingested spoiled food which may have contined [sic] maggots.

"8. Hester Stitt is an avid reader of large braile [sic] books which have accumulated over the past years in her home. This accumulation of paper presents a potential fire hazard to her apartment and the apartments of others in the building in which she lives.

"9. Counsel for respondent made a brief inspection of the apartment and found it generally clean and orderly although somewhat cluttered.

"10. Respondent's apartment is permeated by a foul odor which does not appear to offend her sense of smell as such is somewhat blunted as a result of many years of being subjected to foul odors."

The Ohio Adult Protective Services Act, R.C. 5101.60 et seq., is similar to the statutes on the same subject which have been enacted in Arizona (Section 46-451[B], Ariz. Rev. Stat. Ann. [West 1985 Supp.]), California (Section 15300, Welfare and Institutions, California Codes Ann. [West 1980]), Florida (Sections 410.022 and 410.024[9], Fla. Stat. Ann. [West 1985 Supp.]), and Iowa (Section 235B.1, Iowa Code Ann. [West 1985]). An examination of those sister state statutory enactments was made to determine whether any further interpretations regarding such services were embodied therein.

All of those states and Ohio have statutory provisions for adult protective services which are similar procedurally, i.e., reporting, investigation, notice and hearing requirements, right to counsel, emergency services, remuneration and

consent provisions. Arizona, California, and Florida contain very specific statements of public policy on legislative intent regarding the provision of services to the elderly. The consideration of these states' philosophy on the subject indicate: first, that assistance is intended to help maintain the dignity and relative independence of the recipients in their homes (Arizona, California, and Florida); and, second, that the economic savings engendered by support and assistance as opposed to commitment are beneficial and desirable for both the individual and the state (California and Florida).

Ohio does not make a clear statutory statement as to these twin objectives. R.C. 5101.67(C) does, however, embody the same concerns by requiring that:

"* * * The court shall not order an institutional placement unless it has made a specific finding entered in the record that no less restrictive alternative can be found to meet the needs of the individual. * * *"

The essential focus of the case at bar is appellant's well-being; the fire hazard rationale for removing her to a nursing home is not of such magnitude to move her against her will and desire to a nursing home. The mentioned fire hazard in her apartment premises is one that could be overcome by ordering removal or other disposition of a number of her oversized Braille books, newspapers, etc., to a reasonable quantity which would remove the apparent fire hazard. R.C. 5101.67(C) authorizes such safety provision.

Focusing on appellant's well-being, the "dual policies" of limited assistance in support of personal independence and economical administration of a statutorily authorized program (R.C. 5101.60 *et seq.*) would tend to provide the solution of required continued provision of support services, with a slight expansion of their scope. That is, appellant currently receives weekly homemaker services, which presumably include light housekeeping, from the city of Columbus Home Health Services. A weekly check for spoiled food in her refrigerator and about her apartment and assistance in providing preventative clothing or other required means to deal with her incontinence could alleviate conditions cited by the Franklin County Department of Human Services. The stipulation of facts indicates that appellant is mentally alert and reasonably capable of making most decisions concerning her desired life style to live alone.

With a reasonable amount of assistance, institutionalization is not indicated under the circumstances appearing in the record before us.

Concurrent with slightly expanded homemaker services as authorized herein, the probate court should consider the advisability and necessity to order more frequent visits of the agencies which can provide assistance and supervision of the appellant to monitor the efficacy of the services rendered by those agencies in permitting appellant to reside in the manner and location in which she desires to live.

Counsel for appellant and appellee have discussed in their respective briefs the case of *Stamus* v. *Leonhardt* (S.D. Iowa 1976), 414 F.Supp. 439, wherein it was held that the relevant Iowa statute which provided for involuntary hospitalization of the mentally ill was unconstitutional. An analysis of R.C. 5101.60 *et seq.*, as enacted by the Ohio General Assembly, indicates that the legislature apparently made those enactments with the constitutional objections of *Stamus, supra,* in mind.

Based upon the record of proceedings and the Ohio statutory provisions, this case is remanded to the trial court with instructions to reconsider the available options upon which the appropriate public agencies may structure a program of assistance and continued supervision that will permit appellant to live in her own surroundings with personal safety, living in a reasonably

hygenic manner, and also protecting others living in the same apartment building, free from any personally created fire hazards and unclean living habits. There is some indication in the record, but no finding, that appellant may refuse to cooperate, making effective "in home" assistance impossible. If that condition is found to exist, after bona fide efforts to assist fail and after the opportunity for a hearing, appellant may be involuntarily placed in a proper convalescent home for her protection.

The judgment is accordingly reversed, and the cause is remanded to the trial court to vacate its decision to place appellant in a proper convalescent home, and to authorize the Director of the Franklin County Department of Human Services and any other public agency that may have authority to render assistance to appellant to reside in her present surroundings in accordance with the suggested outline delineated herein or any other reasonable means that may be adopted to permit appellant to live alone as she may desire as outlined herein.

*Judgment reversed and cause remanded with instructions.*

McCORMAC and MOYER, JJ., concur.

STERN, J., retired Justice of the Supreme Court of Ohio, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.